DEWEY PEGNO & KRAMARSKY LLP

777 THIRD AVENUE  NEW YORK, NEW YORK  10017

PHONE: (212) 943-9000  FACSIMILE: (212) 943-4325

WWW.DPKLAW.COM

August 22, 2018

<u>VIA EMAIL AND ECF</u>

The Honorable Analisa Torres
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *Credit Suisse Securities (USA) LLC v. Christopher M. Laver*
            <u>*No.* 18 Civ. 02920 (AT)</u>

Your Honor:

      On behalf of Petitioner Credit Suisse Securities (USA) LLC ("Credit Suisse"), and pursuant to Section III of your honor's Individual Practices in Civil Cases, we respectfully submit this letter in response to Respondent Christopher M. Laver's ("Respondent") August 15, 2018 pre-motion letter setting forth the anticipated for Respondent's motion to dismiss ("Resp. Ltr."). The positions set forth in Respondent's letter are without merit.

      Credit Suisse's petition to compel arbitration is a relatively straightforward one: Mr. Laver, as a highly-compensated Credit Suisse employee, signed an agreement to arbitrate employment-related disputes of the type routinely enforced in federal courts. Despite that agreement, Mr. Laver initiated an action in a California court—in violation of both the forum and venue selection provisions in his agreement with Credit Suisse. Credit Suisse brought this action to vindicate its contractual rights and compel Mr. Laver to arbitrate any claims he may wish to assert arising out of or relating to his former employment with Credit Suisse—including those he improperly asserted in his now-dismissed filing in federal court in the Northern District of California (N.D. Cal. Case No. 3:18-cv-00828-WHO; the "California Action").

      As is clear from Respondent's pre-motion letter (which fails to address the substance of Credit Suisse's petition), Mr. Laver has no substantive grounds upon which to resist arbitration of his claims in New York. Indeed, Judge Orrick has already held in the California Action, and Respondent acknowledges in his pre-motion letter, that Credit Suisse's Employment Dispute Resolution Program ("EDRP")—the agreement between Credit Suisse and Respondent to arbitrate employment-related disputes—is valid, enforceable, and applicable to Mr. Laver and his employment-related claims. *See* Resp. Ltr. at 1-2.

      Having no substantive argument, Respondent resorts to arguing that Credit Suisse lacks standing to pursue its petition, or that its petition is moot, or that its petition is not ripe for adjudication—essentially the same baseless argument framed three different ways. Those

The Honorable Analisa Torres
August 22, 2018
Page 2

positions are premised on the assertion that "Mr. Laver currently has no claims being litigated" in California. Resp. Ltr. at 2. Building upon that shaky foundation, Respondent claims that, as a result, Credit Suisse "can identify no actual or threatened distinct and palpable injury." *Id.*

But a cursory review of Respondent's pre-motion letter reveals that simply is not true: Mr. Laver has filed a notice of appeal of Judge Orrick's decision, and is, in fact, still litigating in California. Resp. Ltr. at 3 ("Mr. Laver has noticed his appeal, and that appeal is likely to take approximately 18-20 months to resolve."). More fundamentally, Mr. Laver has *not* agreed to abide by his obligations under the EDRP. Respondent has been unwilling to mediate his claims in the mediation commenced by Credit Suisse pursuant to the EDRP and has been unwilling to arbitrate his claims in New York pursuant to his contract with Credit Suisse. If he did so, the parties could mediate and arbitrate their dispute pursuant to the EDRP and there would be no controversy for the SDNY to resolve. But until Respondent does so, there is a live controversy and (as Judge Orrick pointed out) under the Federal Arbitration Act, the SDNY is the only Court that can appropriately rule upon Credit Suisse's petition and grant Credit Suisse the relief it seeks—an order compelling Mr. Laver to pursue arbitrate any employment-related claims he wishes to assert (including those asserted in the California Action) in one of the contractually-stipulated New York fora. Mr. Laver should not be permitted to force Credit Suisse to forfeit its contractual rights by improperly filing a class action in California.

In fact, Respondent's appeal of Judge Orrick's order *increases* the degree to which Credit Suisse will be injured by Mr. Laver's violation of the EDRP and *increases* the need for the relief Credit Suisse seeks through petition. By his own estimation, Respondent's appeal will require Credit Suisse to continue to expend resources litigating in a contractually improper forum for 18-20 months, during which time (leaving aside the monetary expense) relevant evidence will become harder to obtain, memories will fade, and the case will become generally more difficult to try.[1]

Respondent's argument that Credit Suisse, in the absence of relief from this Court, will not suffer any injury unless the Ninth Circuit reverses Judge Orrick's dismissal order does not withstand serious scrutiny. Regardless of the outcome of the Ninth Circuit appeal, if this Court does not hear and decide Credit Suisse's petition, Credit Suisse will be forced to expend substantial resources and be in a far worse position at the end of two years than it is in today, all in the face of what is already well established, black-letter law: that Mr. Laver is bound by the EDRP and required to pursue any employment-related claims against Credit Suisse in a manner

---

[1] For those reasons, Respondent's alternative suggestion that a stay of this action is appropriate does not fare any better. Respondent asserts that a stay "would preserve the status quo," but the conclusion he draws from that assertion, that a stay "would not prejudice Credit Suisse's rights," does not follow. Mr. Laver improperly filed the California Action in violation of his contractual obligation to arbitrate and to Credit Suisse's detriment. The "status quo" is causing harm to Credit Suisse, which is precisely why Credit Suisse brought this action, and why it should proceed unhindered, as it is presently scheduled to do. Staying this action pending a decision from the Ninth Circuit would simply guarantee that Credit Suisse suffers the precise harm that it seeks to avoid through its petition—forced litigation in an improper forum in violation of the EDRP.

The Honorable Analisa Torres
August 22, 2018
Page 3

consistent with his contractual obligations, including the EDRP's arbitration provision, forum selection clause, and valid and enforceable class-action waiver. *See, e.g., Credit Suisse Sec. (USA) LLC v. Tracy*, 812 F.3d 249) (2d Cir. 2016); *Cohen v. UBS Financial Servs., Inc.*, 799 F.3d 174, 178 (2d Cir. 2015).

The bulk of Respondent's letter is devoted to an argument that there is no "case or controversy" here and, as such, this Court lacks constitutional authority to decide Credit Suisse's Petition. But, as set forth above, the very cases cited in that letter demonstrate there is a "case or controversy" to be adjudicated here because Credit Suisse will suffer a "distinct and palpable" injury in the absence of relief from this Court. *See* Resp. Ltr. at 2 *(*citing *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329-30 (2d Cir. 1997)).

Respondent cites no cases to the contrary. With two exceptions, the cases cited in Respondent' pre-motion letter simply set forth the relevant legal standards. The sole exceptions are two factually-distinguishable cases that *underscore* this Court's authority to decide Credit Suisse's Petition. In *Friedman's, Incorporated v. Dunlap*, the Fourth Circuit, in a split opinion, denied a motion to compel arbitration as moot (notwithstanding a live appeal) because a state court had already compelled arbitration. 290 F.3d 191, 197 (4th Cir. 2002). However, it only did so because it found that, due to the state court's decision compelling arbitration, "there [was] no effective relief available in federal court that [the movant] ha[d] not already received." *Id*. In stark contrast, Credit Suisse *did not* obtain, or even seek, to compel arbitration in the California Action because, as noted by Judge Orrick, Credit Suisse could not obtain the relief it seeks, an order compelling a New York arbitration pursuant to the EDRP, in that forum. Unlike in *Friedman's*, Credit Suisse seeks relief through its Petition that it has never sought in any other forum, could not obtain in any other forum, and is necessary to protect Credit Suisse from suffering continued harm as a result of Respondent's repeated violation his contractual obligation to arbitrate employment-related disputes in New York.

The other case Respondent cites as authority for the novel proposition that his continued violation of his contractual obligations does not constitute a continuing harm to Credit Suisse fares no better. In *Chirico* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Merrill Lynch "moved to dismiss, or in the alternative to compel arbitration." 1999 U.S. Dist. LEXIS 20180, at *1 (N.D. Cal. Dec. 13, 1999). The district court granted Merrill Lynch's motion to dismiss and had no occasion to consider its alternative motion to compel arbitration. No such circumstances are present here. Credit Suisse's sole request for relief through its petition is an order compelling arbitration of Mr. Laver's employment-related claims in accordance with the EDRP.

The Honorable Analisa Torres
August 22, 2018
Page 4

In fact, it is well established that refusal to arbitrate according to the terms of the parties' agreement gives rise to a case or controversy sufficient to provide Article III standing pursuant to the FAA. *See Raytheon Co. v. Nat'l Union Fire Ins. Co.*, 306 F. Supp. 2d 346, 359 (S.D.N.Y. 2004) (compelling arbitration in accordance with the parties' agreement where respondent filed preemptory litigation in improper venue); *see also* 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction"). Mr. Laver's continued and unjustified refusal to resolve his employment-related claims pursuant to the EDRP confers jurisdiction upon the Southern District of New York to compel him to do so.[2]

Credit Suisse's petition is thus based on a cognizable and continuing harm to Credit Suisse and will likely be granted notwithstanding the arguments set forth in your July 19 Letter.

Sincerely,

Stephen M. Kramarsky

SMK/mb

cc:   Jeffrey K. Riffer (by email)
      Julie Z. Kimball (by email)
      Rachel Geman (by email)
      Roger Norton Heller (by email)

---

[2] In addition, Credit Suisse may well have direct claims against Mr. Laver for his conduct in departing Credit Suisse. In particular, to the extent that Mr. Laver breached his contractual and common law commitments to Credit Suisse or otherwise acted to the detriment of Credit Suisse, particularly while he was still employed as a senior executive, Credit Suisse will seek recompense for such harm. Consistent with its contractual obligations under the EDRP and its obligations as a FINRA member, Credit Suisse could only seek such recompense through an arbitration. Far from promoting "party and judicial efficiency," Mr. Laver's insistence on pursuing his claims in an improper forum may result in yet another litigation between these parties in yet another forum. If Mr. Laver is so concerned about "efficiency," he should not have improperly filed the California Action, forcing Credit Suisse to take action in several different fora in order to vindicate its contractual rights.